1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICE LAZAE MARTIN, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MICHAEL CASTILLO, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:25-cv-01123-KES-CDB<br><br>FIRST SCREENING ORDER DIRECTING PLAINTIFF TO RESPOND<br><br>(Doc. 1)<br><br>ORDER DENYING MOTIONS (1) FOR ELECTRONIC FILING PRIVILEGES, (2) FOR MONETARY RELIEF, (3) TO EXPEDITE, AND (4) FOR SANCTIONS<br><br>(Docs. 9, 13, 14, 16)<br><br>**21-DAY DEADLINE** |

Plaintiffs Felice Lazae Martin and Hector Joseph Borges (collectively, "Plaintiffs"), proceeding pro se and *in forma pauperis* ("IFP"), initiated this action with the filing of a complaint on September 4, 2025. (Doc. 1). Pursuant to 28 U.S.C. § 1915, federal courts are required to screen IFP complaints and dismiss the case if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *see also id.* at 1129 (noting that the requirement to screen complaints pursuant to § 1915(e) "applies to all in forma pauperis complaints, not just those filed by prisoners.").

Additionally, Plaintiffs filed numerous motions requesting various forms of relief. *See* (Docs. 9, 13, 14, 16). The Court will address each in turn. As discussed in more detail below,

following its preliminary screening of Plaintiffs' complaint, the Court concludes that it fails to plead any cognizable claims arising under federal law and it does not appear the Court's exercise of supplemental jurisdiction over Plaintiffs' state law claims is warranted. Accordingly, Plaintiffs will be ordered to file an amended complaint or, alternatively, a notice of voluntary dismissal of this action.

## I.  MOTION FOR ELECTRONIC FILING PRIVILEGES

Pending before the Court is Plaintiff's motion for electronic filing privileges. (Docs. 9, 19). Generally, "self-represented litigants are not permitted to e-file in this district." *Miller v. Sacramento City Unified Sch. Dist.*, No. 2:21-cv-0757-JAM-CKD PS, 2021 WL 3539733, at *3 (E.D. Cal. Aug. 11, 2021). Under the Court's Local Rules, pro se parties are required to "file and serve paper documents" and "may not utilize electronic filing except with the permission of the assigned Judge or Magistrate Judge." Local Rule 133(b)(2) (emphasis omitted). Any request for an exception to this rule must be submitted as a stipulation between the parties or a "written motion setting out an explanation of reasons for the exception." Local Rule 133(b)(3).

It is within the Court's discretion to grant or deny such a request. *Reddy v. Precyse Solutions LLC*, No. 1:12-cv-02061-AWI-SAB, 2013 WL 2603413, at *3 (E.D. Cal. June 11, 2013). "[E]-filing is a privilege which in some circumstances may be extended to self-represented parties. If the case proceeds beyond the pleadings stage and plaintiff has not abused the filing procedures, the court will consider a further motion for e-filing privileges." *Miller*, 2021 WL 3539733 at *3.

Here, Plaintiffs assert that their disabilities prevent them from travelling to the courthouse to make filings and that they are unable to afford high process server fees that they have incurred for unidentified reasons. (Doc. 9 at 4-6; Doc. 19 at 2). The Court notes that travel to the courthouse, if any, is unnecessary as Plaintiffs may mail documents to the Court for filing. Local Rule 133(b)(2). Expenses arising from printing and postage are likely to be *de minimis* and Plaintiffs presently are under no service obligations implicating the need to incur process server fees. Specifically, because Plaintiffs have been granted IFP status, only upon the Court's determination that any amended complaint alleges a cognizable claim will the Court direct service of process and, thereafter, the Court will direct the United States Marshals Service to effect service of

1    summonses and complaint without charge to Plaintiffs. *See* Fed. R. Civ. P. 4(c)(3); Local Rule

2    512(f). As such, upon review of the pleadings, including Plaintiffs' motion, as well as the fact that

3    Plaintiffs already have successfully filed numerous documents in this Court, the Court finds that

4    this action does not warrant an exception to the Local Rule.

5        Accordingly, Plaintiffs' motion for electronic filing privileges will be denied.

6        **II.    MOTION FOR MONETARY RELIEF**

7        Also pending before the Court is Plaintiffs' motion for monetary relief. (Doc. 13). Plaintiffs

8    purport to seek $10,000 and return of all property. *Id.* at 3. As Plaintiffs' claims have not been

9    adjudicated on the merits, any award of damages would be inappropriate and premature. *See Sims*

10   *v. Veal*, No. CIVS-07-0898MCE EFB, 2010 WL 3431803, at *9 (E.D. Cal. Aug. 31, 2010), *report*

11   *and recommendation adopted*, 2010 WL 3853005 (Sept. 30, 2010).

12       Accordingly, Plaintiffs' motion for monetary relief will be denied.

13       **III.    MOTION TO EXPEDITE**

14       Also pending before the Court is Plaintiffs' motion to expedite rulings. (Doc. 14). As noted

15   in prior orders (Docs. 8, 20), the Court is cognizant that Plaintiffs have moved for a temporary

16   restraining order and, more recently, a preliminary injunction for which the undersigned anticipates

17   issuing findings and recommendations shortly. However, as to other aspects of the action, the Court

18   does not have an expedited calendar. As of the date of this Order, the undersigned presides over is

19   referred more than 460 civil cases in various stages of litigation. While the Court regrets the delays

20   in the litigation of this action that are unavoidable given the tremendous judicial resource

21   emergency experienced throughout this District, Plaintiffs cite no authority – and the Court is aware

22   of none – to persuade the undersigned that Plaintiffs' case merits expedited or favored treatment to

23   the detriment of other cases pending on the Court's docket.

24       Accordingly, Plaintiffs' motion to expedite will be denied.

25       **IV.    MOTION FOR SANCTIONS**

26       Also pending before the Court is Plaintiffs' motion for sanctions and protective order. (Doc.

27   16). Plaintiffs assert that, on September 9, 2025, Defendant Castillo emailed Plaintiffs. Plaintiffs

28   assert that Defendant Castillo sought to arrange a time for Plaintiffs to gather their belongings from

1    the property at issue, and included Defendant Schneider as a recipient of the email. *Id.* at 2.

2    Plaintiffs proffer no additional facts in support and cite no applicable authority for their asserted

3    propositions that the emails constitute improper *ex parte* communications, witness intimidation,

4    and contempt of court. *Id.* at 3.

5        Defendant Castillo's communications do not constitute improper *ex parte* communications.

6    An *ex parte* communication is between counsel or a party and the court, where the opposing counsel

7    or party is not present. That is not the case here, as Defendant Castillo's communication was not

8    made with the Court. Additionally, as Plaintiffs are not represented by counsel, Defendants are

9    permitted to correspond directly with Plaintiffs. *See Grzeslo v. Sauzo*, No. 1:21-CV-01371-JLT-

10   EPG PC, 2023 WL 35979, at *1 (E.D. Cal. Jan. 4, 2023) ("An ex parte communication is a

11   'communication between counsel or a party and the court when [the] opposing counsel or party is

12   not present.' Plaintiff's claims that defense counsel engaged in ex parte communications with

13   Plaintiff are incorrect. Defense counsel is permitted to correspond directly with Plaintiff where

14   Plaintiff is not represented by counsel. There is nothing improper about defense counsel

15   communicating with Plaintiff without including the Court.") (citing *Communication*, BLACK'S LAW

16   DICTIONARY (11th ed. 2019)).

17       Plaintiffs cite 18 U.S.C. § 1512 for the proposition that the communications constituted

18   witness intimidation. 18 U.S.C. § 1512 is a criminal statute and, therefore, not a basis for relief in

19   this civil action. Furthermore, Plaintiffs are not witnesses in this action but, rather, parties to it.

20       Additionally, Plaintiffs cite *Int'l Union, United Mine Workers of Am. v. Bagwell*[1] for the

21   proposition that the communications constitute contempt of court, as an attempt to "circumvent

22   federal proceedings." (Doc. 16 at 3). As of the date of this order, the Court has not issued any orders

23   restricting Defendants' communications with Plaintiffs. As such, Plaintiffs citations to authority

24   are inapplicable. *See Int'l Union*, 512 U.S. at 827 (explaining that "civil contempt sanctions, or

25   those penalties designed to compel future compliance with a court order, are considered to be

26   coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding

27   upon notice and an opportunity to be heard").

28
     ───────────────────
        [1] 512 U.S. 821 (1994).

1    Accordingly, Plaintiffs' motion for sanctions and protective order (Doc. 16) will be denied.

2    *    *    *    *    *

3    Plaintiffs are admonished that the filing of baseless motions such as those they filed for

4    monetary relief and for sanctions unnecessarily taxes the Court's limited resources to the detriment

5    of timely resolving Plaintiffs' substantive claims on the merits. Any further filings by Plaintiffs of

6    frivolous motions may result in the imposition of sanctions, including a recommendation that this

7    action be dismissed. *See Wilkins v. Heslop*, No. 2:20-CV-01622-DJC-DBP, 2024 WL 1857211, at

8    *2 (E.D. Cal. Apr. 29, 2024) ("Plaintiff is cautioned that further filing of frivolous motions for

9    sanctions or other frivolous motions may result in the imposition of sanctions on plaintiff. Such

10    sanctions may include dismissal of this action …") (citing, *inter alia*, Fed. R. Civ. P. 11(c)).

11    **V.    SCREENING STANDARD**

12    Turning to Plaintiffs' complaint, pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct

13    an initial review of a complaint by a plaintiff authorized to proceed IFP and shall dismiss the case

14    at any time if the Court determines that the allegation of poverty is untrue, or that the action or

15    appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

16    monetary relief against a defendant who is immune from such relief. *See Calhoun v. Stahl*, 254

17    F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary

18    relief from immune defendants); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (district

19    court has discretion to dismiss IFP complaint under 28 U.S.C. § 1915(e)); *Barren v. Harrington*,

20    152 F.3d 1193 (9th Cir. 1998) (affirming s*ua sponte* dismissal for failure to state a claim). If the

21    Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent

22    that the deficiencies of the complaint can be cured by amendment. *Lopez*, 203 F.3d at 1130.

23    In determining whether a complaint fails to state a claim, the Court applies Federal Rule of

24    Civil Procedure 8(a), pursuant to which a complaint must contain "a short and plain statement of

25    the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual

26    allegations are not required, but "[t]hreadbare recital of the elements of a cause of action, supported

27    by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

28    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed as a

matter of law for failure to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See, e.g.*, *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In reviewing a pro se complaint, the court liberally construes the pleadings and accepts as true all factual allegations contained therein. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, although a court accepts as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability … 'stops short of the line between the possibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Courts may deny a pro se plaintiff leave to amend where amendment would be futile. *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)); *see Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995) (holding that dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies cannot be cured by amendment or after the pro se litigant is given an opportunity to amend).

## VI.    SUMMARY OF THE COMPLAINT[2]

According to the allegations of their complaint, on May 23, 2024, Plaintiffs "entered into a month-to-month rental agreement" with landlord Defendant Castillo for a residential property in Pine Mountain Club, California. (Doc. 1 ¶ 38; *id*. at 102). Plaintiffs paid through October 2024 for six months of tenancy. *Id*. ¶ 38. Defendant Castillo "failed to disclose known, pre-existing water damage and structural issues that would create toxic mold conditions, despite actual knowledge of these defects from prior incidents." *Id*. ¶ 39. The property "lacked functional heating" from the beginning of the tenancy, resulting in temperatures reaching 30 to 40 degrees Fahrenheit indoors

---

[2] The Court accepts Plaintiffs' allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915

1   during the winter months. *Id.* ¶ 40 (citing Ex. I[3]). Castillo "admitted during a phone call that water

2   intrusion was a pre-existing issue he believed had been fixed but clearly had not been resolved."

3   *Id.* ¶ 41 (citing Ex. BB). The combination of these circumstances "created optimal conditions for

4   toxic mold growth," which would result in Plaintiffs' asserted respiratory illnesses. *Id.* ¶ 42.

5       Between June 2024 and November 2024, Plaintiffs obtained multiple repair quotes at their

6   own expense regarding said conditions, documented declining air quality using an air purifier which

7   routinely returned "poor" quality readings, spent "approximately $1,500 on stopgap solutions,"

8   maintained communication with Castillo to assist in finding solutions, and "[p]rovided ongoing

9   updates about deteriorating conditions." *Id.* ¶ 43 (citing Ex. J). During this period, Castillo

10  "repeatedly claimed repair quotes were 'too expensive' and took no remedial action." *Id.* ¶ 44

11  (citing Ex. AA). "Professional service providers who assessed the property confirmed water

12  intrusion levels that would generate hazardous mold within walls, warning of serious health risks."

13  *Id.* ¶ 45 (citing Ex. K). Despite repeated warnings and complaints, Castillo "refused all

14  remediation" and "continued to list the [property] for short-term rental on Airbnb throughout

15  [Plaintiffs]' tenancy" and in November 2024, he "inquired about renting it for Thanksgiving despite

16  knowing the home had chronic water intrusion and no functioning heat … ." Plaintiff Martin came

17  down with "pneumonia in late November 2024, a condition her treating physicians linked to toxic

18  mold exposure in the home." *Id.* ¶¶ 46, 51.

19      By October 2024, Plaintiff Martin "became bedridden" due to autistic burnout, catatonia,

20  and neurological effects from mold poisoning. *Id.* ¶ 47. "[M]ycotoxin exposure caused progressive

21  neurological deterioration in both [Plaintiffs]." *Id.* ¶ 48. "Air quality measurements confirmed the

22  toxic environment," and the "only heated room in the house was directly adjacent to the toxic mold

23  source … ." *Id.* ¶¶ 49-50. "In mid-December 2024, [Plaintiff Martin] was diagnosed with

24  pneumonia" and sought "formal medical testing." *Id.* ¶ 52 (citing Ex. D). Defendant Castillo

25  claimed "repairs were 'too expensive' and refused remediation." *Id.* ¶ 53. Plaintiffs expressed to

---

26        [3] No such exhibit is attached to the complaint. The complaint appears to include a cover page for

27  an Exhibit E, but no accompanying exhibit therefor, and does not attach any exhibits following Exhibit D.
    Plaintiffs filed on September 11, 2025, a notice to the Court in which they represent that they filed an

28  incomplete exhibit package and that exhibits may be referenced incorrectly. *See* (Doc. 19). Regardless, the
    Court will include Plaintiffs' citations thereto in its summary of the allegations within the complaint.

1   Defendant Castillo that they wished to "relocate safely" and "offered to seek alternative housing

2   without requesting moving assistance, asking only to be excused from rent payments during the

3   search period … as they were being forced into a constructive eviction … ." *Id.* ¶¶ 57-58 (citing

4   Cal. Civ. Code §§ 1942, 1942.4).

5       "[Plaintiffs] paid rent through October 23, 2024, and ceased payment only when [Plaintiff

6   Martin] became too ill from pneumonia to work and earn income." Plaintiffs did not pay rent in

7   December 2024 and "spent $1,500 on air purifiers and mold remediation products" in anticipation

8   of a visit from Plaintiff Martin's mother. Plaintiffs could not afford to immediately relocate and

9   "believed the mold might be limited to visible areas near windows and water fixtures." *Id.* ¶¶ 59-

10  61. Plaintiff Martin's mother "immediately experienced adverse health effects" upon arrival. *Id.* ¶

11  62. Defendant Castillo issued a rent demand on December 31, 2024. *Id.* ¶¶ 64, 66.

12      On January 3, 2025, Plaintiffs "commenced evacuation" from the property, "removing

13  essential items while wearing protective masks." On January 6, 2025, Plaintiffs retrieved "essential

14  belongings before ceasing regular access to the property" but "maintained continuous intent to

15  return for remaining property once health permitted and never abandoned their tenancy." *Id.* ¶ 68

16  (citing Ex. D). On January 11, 2025, Plaintiff Martin sent Defendant Schneider (Castillo's alleged

17  attorney, *see* Doc. 1 at ¶ 6) a formal preservation of evidence notice, "warning that any unauthorized

18  remediation, repairs, or alterations to the property would constitute spoliation of evidence in

19  ongoing legal matters." Defendants "refused certified mail and evaded written

20  acknowledgment … ." *Id.* ¶ 72. Between January 7 and 15, 2025, Defendants "changed all locks"

21  on the property. *Id.* ¶ 73. On January 16, 2025, Plaintiffs returned to attempt to retrieve additional

22  belongings but found themselves locked out of the property. *Id.* ¶ 74 (citing Ex. F). On January 22,

23  2025, Plaintiffs sent a demand letter via certified mail, which was refused by Defendants and

24  "returned unclaimed on March 5, 2025." *Id.* ¶ 76-77 (citing Ex. G).

25      Defendant Schneider rejected all demands, mischaracterized said demands, mocked

26  Plaintiffs' disabilities, and attempted to coerce Plaintiffs by "conditioning property return on

27  acceptance of 'abandonment' narrative." *Id.* ¶ 78. On January 16, 2025, Plaintiffs reported the

28  lockout to the Kern County Sheriff's Office ("KCSO"), asserting that Deputy Curiel "improperly

1   [categorized] the matter as 'civil' despite California Attorney General Information Bulletin 2022-

2   DLE-05 explicitly mandating criminal enforcement of illegal lockouts … ." *Id.* ¶ 79 (Ex. B).

3   Plaintiffs' "subsequent attempts to correct this misclassification triggered systematic obstruction,

4   with Sergeant Tafoya (Badge #1166) employing circular logic to discourage filing of a criminal

5   report, requiring [Plaintiff Martin] to request seven times before reluctantly opening the

6   investigation." *Id.* ¶ 81. "Senior Detective Sanchez then assumed control of the investigation,

7   demanding [Plaintiffs] define applicable penal codes despite being provided [Bulletin 2022-DLE-

8   05]." *Id.* ¶ 82. Senior Detective Sanchez "claimed inability to identify criminal violations" after

9   Plaintiffs submitted evidence through KCSO's portal and did not "facilitate [Plaintiffs'] direct

10  submission to the District Attorney" after Plaintiffs' "assertion of their legal rights." *Id.* ¶¶ 83-85.

11      After Plaintiffs initiated an internal affairs investigation and "personally called Deputy

12  Spurling (Badge #1619) at Sergeant Orona's suggestion … did she produce a Supplemental Report

13  on May 16, 2025, adding felony violations …" *Id.* ¶ 86 (citing Exs. V, C). Plaintiffs assert that law

14  enforcement deliberately refused "to enforce California Penal Code §§ [418, 487, and 518] despite

15  clear probable cause" and made contact while in off-duty status with Defendant Castillo, resulting

16  in exposure of "systematic denial of [Plaintiffs'] constitutional rights." *Id.* ¶ 87 (citing Ex. B).

17  Plaintiffs allege that the Kern County District Attorney's Office has "refused prosecution" without

18  legal justification. *Id.* ¶ 88. Plaintiffs provide that their property remains detained at the Pine

19  Mountain Club property and Defendant Schneider's communications with Plaintiffs "constitute a

20  pattern of professional misconduct." *Id.* ¶¶ 91-92.

21      Plaintiffs assert in their complaint numerous causes of action arising from violations of their

22  rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, pursuant to 42

23  U.S.C. § 1983 and *Monell v. Department of Social Services*[4], violations of several criminal statutes,

24  and violations of state law. *Id.* at 38-66, 70. Plaintiffs separately assert that Kern County Superior

25  Court shut down its electronic filing service from August 25, 2025, to October 6, 2025, resulting

26  in Plaintiffs inability to file a complaint for emergency relief and violating 28 C.F.R. § 35.160, 42

27  U.S.C. § 1983, and the Americans with Disabilities Act ("ADA"). *Id.* at 79-82. Plaintiffs allege

28  _____

[4] 436 U.S. 658 (1978).

1  resulting physical and psychological harm. *See id.* ¶¶ 63, 65, 67, 69, 89, 101, 102-104.

2  **VII.  DISCUSSION**

3  Federal courts are courts of limited jurisdiction and may hear only those cases authorized

4  by federal law. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction

5  is a threshold inquiry, and "[f]ederal courts are presumed to lack jurisdiction, 'unless the contrary

6  appears affirmatively from the record.'" *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (quoting

7  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). Without jurisdiction, the district

8  court cannot decide the merits of a case or order any relief and must dismiss the case. *See Morongo*

9  *Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A

10  federal court's jurisdiction may be established in one of two ways: actions arising under federal

11  law or those between citizens of different states in which the alleged damages exceed $75,000. 28

12  U.S.C. §§ 1331, 1332. "Subject-matter jurisdiction can never be waived or forfeited," and "courts

13  are obligated to consider *sua sponte*" subject matter jurisdiction even when not raised by the parties.

14  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

15  A case "arises" under federal law either where federal law itself creates the cause of action

16  or where the vindication of a state law right would "necessarily [turn] on some construction of

17  federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002)

18  (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)).

19  Stated otherwise, a claim arises under federal law if the complaint cognizably pleads that federal

20  law created the claim asserted or the plaintiff's right to relief necessarily depends on resolving a

21  substantial question of federal law. *Franchise Tax Bd.*, 463 U.S. at 27-28.

22  Courts determine whether they have federal question jurisdiction by applying the "well-

23  pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[F]ederal

24  jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

25  pleaded complaint." *Id*. Federal question jurisdiction does not arise from the "mere presence of a

26  federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804,

27  813 (1986); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)

28  (holding that passing references to federal issues are not a "password opening federal courts to any

state action embracing a point of federal law").

## A. Preliminary Matters

As a preliminary matter, some of Plaintiffs' causes of action invoke purported violations of state criminal law, namely California Penal Code §§ 418, 487(a), 518, and 523, as well as false imprisonment, though Plaintiffs do not cite to a specific statute for the latter. (Doc. 1 at 61-66, 70).

To the extent Plaintiffs seek relief pursuant to criminal law, references to criminal statutes do not state a claim for relief in a section 1983 proceeding. *See Clinton v. Allison*, No. 3:23-cv-01471-CAB-SBC, 2024 WL 1859956, at *10 (S.D. Cal. Apr. 29, 2024) (discussing plaintiff's references to federal and state criminal statutes and finding "criminal statutes do not give rise to civil liability under section 1983"); *Jones v. County of Sonoma*, No. 23-cv-02730-CRB, 2024 WL 1354496, at *4 (N.D. Cal. Mar. 29, 2024) (finding plaintiff "fails to state a claim under 18 U.S.C. § 1503 because the statute only applies to criminal cases and does not provide a civil cause of action"); *Bland v. Gross*, No. 1:20-cv-00542-DAD-BAM (PC), 2021 WL 120964, at *1 (E.D. Cal. Jan. 13, 2021) ("'Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.'") (quoting *Kennedy v. World Sav. Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at *7 (N.D. Cal. Apr. 21, 2015)); *Rope v. Facebook, Inc.*, No. CV 14-4900 UA, 2015 WL 13918858, at *2 (C.D. Cal. Oct. 26, 2015) (same); *Loadholt v. Obama*, No. 2:13-cv-2607-MCE-EFB PS, 2015 WL 848549, at *3 (E.D. Cal. Feb. 26, 2015) (same). Accordingly, Plaintiffs are not entitled to any relief pursuant to these criminal statutes.

Additionally, Plaintiffs attach to their complaint voluminous exhibits. Although for the purposes of the initial screening of Plaintiffs' complaint the Court will give consideration to the exhibits attached thereto, Plaintiffs are advised that the Court may elect to disregard factual allegations that are not specifically pled in the complaint itself. It is not sufficient that such allegations are included in attachments to the complaint. *See Lopez v. Bank of Am.*, No. 1:11-CV-00485-LJO, 2011 WL 1134671, at *2 (E.D. Cal. Mar. 28, 2011) (explaining that "a plaintiff is well advised to state fully the facts supporting his claims against the defendants and to refrain from attaching exhibits … Plaintiff is cautioned that, in determining whether a complaint states cognizable claims, the Court's duty is to evaluate the complaint's factual allegations, not to wade

through exhibits"); *see also Ford v. Sanchez-Galvin*, No. 24-CV-1025 JLS (KSC), 2024 WL 5081635, at *1 (S.D. Cal. Dec. 11, 2024) ("Exhibits attached to a complaint are not a substitute for factual allegations.") (internal quotation and citation omitted). In any amended complaint, Plaintiffs must include factual allegations in the body of their complaint and refrain from attaching voluminous exhibits.

### B.  Section 1983

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)). This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

Here, Plaintiffs fail to name any individuals as defendants who acted under color of state law. According to Plaintiffs' allegations, Defendant Castillo is a private individual who rented a private property to Plaintiffs and Defendant Schneider is an attorney licensed to practice law in California who was retained by Defendant Castillo and communicated with Plaintiffs in regards to the property. (Doc. 1 at 10, 24). Neither individual is an appropriate defendant for a section 1983 claim. *See Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) ("Section 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrong.'") (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)); *Acord v. Champions Recovery Alternatives*, No. 1:17-CV-01145-LJO-EPG, 2018 WL 2117383, at *2 (E.D. Cal. May 8, 2018) (same).

In some circumstances, the actions of a private actor may render him liable under section 1983. Thus, a private party "proceeds under the color of state law for purposes of a § 1983 claim where 'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Wexler v. City of San Diego*, No. 24-cv-137-DMS-DDL, 2024 WL 4668152, at *8 (S.D. Cal. Nov. 4, 2024) (quoting *Caviness v.*

1    *Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)). Courts apply various tests

2    to determine whether a plaintiff adequately has pleaded defendants acted under the color of state

3    law. *Id.* Relevant here[5], pursuant to the "public function test," a private individual may be deemed

4    a state actor under section 1983 "when they perform a public function that has been 'traditionally

5    the exclusive prerogative of the State.'" *Acord*, 2018 WL 2117383, at *2 (quoting *Rendell–Baker

6    v. Kohn*, 457 U.S. 830, 842 (1982)). Pursuant to the "joint action test," a private individual may be

7    deemed a state actor under section 1983 "if he or she was part of a conspiracy or was a 'willful

8    participant in [other] joint action' with a state actor that caused the constitutional violation." *Id.* at

9    *3 (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). To prove such a conspiracy, "an

10   agreement or 'meeting of the minds' must be shown … a private defendant must share with the

11   public entity the goal of violating a plaintiff's constitutional rights." *Id.* (quoting *Fonda v. Gray*,

12   707 F.2d 435, 438 (9th Cir. 1983) & *Franklin*, 312 F.3d at 445). The Ninth Circuit requires a

13   "substantial degree of cooperation" between the state actor and private citizen before finding any

14   such conspiracy. *Franklin*, 312 F.3d at 445.

15       The complaint fails to plead facts sufficient to render either Defendant liable under the

16   "public function test" or the "joint action test." Plaintiffs plead no facts supportive of the "public

17   function test," other than the mere fact that Defendant Schneider is an attorney licensed in

18   California. (Doc. 1 ¶ 149). This fact alone does not render Defendant Schneider a state actor.

19       As to the "joint action test," Plaintiffs advance the conclusory allegations that "the Kern

20   County District Attorney—weaponizing prosecutorial discretion against victims—has refused

21   prosecution for 175+ days without legal justification. This selective non-prosecution, particularly

22   protecting attorney [Schneider] from extortion charges, demonstrates the state's complicity in the

23   constitutional violations." *Id.* ¶ 122. Plaintiffs set forth no facts to support such claims, notably as

24   to the nature of the conspiracy, any "meeting of the minds" between Defendant Schneider and state

25   actors, and the constitutional rights to be violated therefrom.

26       As to the latter, Plaintiffs make conclusory allegations relating to possible violations of

27

28       _____

       [5] Because Plaintiffs' allegations do not implicate two of the recognized tests – the "state
       compulsion test" and the "governmental nexus test" – the Court does not reach those here. *See id.* at *9-10.

constitutional rights. For example, Plaintiffs assert that Defendant Castillo used "legal process threats to maintain illegal detention of property without due process, violating the Fourteenth Amendment[.]" (Doc. 1 ¶ 151). The only other support Plaintiffs advance consists of bare allegations, *e.g.*, "[c]oercion to forfeit legal claims through property hostage-taking," "[c]ontinued detention of all worldly possessions without warrant or court order," "[p]roperty detention without legal process or hearing," and "[d]iscrimination based on disability status and pro se representation." *Id.* ¶ 152. Plaintiffs, thus, assert vague and sweeping claims with little to no factual support.

Plaintiffs' conclusory allegations suggesting complicity between or interference by either Defendant Castillo or Defendant Schnieder and law enforcement in connection with any investigation by law enforcement of Plaintiffs' complaints does not adequately establish state action by Defendants. Thus, for instance, "a private individual is not transformed into a state actor by: "merely complaining to the police," *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); "providing false information to the police," *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2008); "ask[ing] that an individual be arrested," *Hodges v. Holiday Inn Select*, No. 07-cv-1169 OWW TAG, 2008 WL 1945532, at *4 (E.D. Cal. May 1, 2008) (citing *Collins*, 878 F.2d at 1155); or making a "request for the police to perform their peace-keeping functions," *see Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

Furthermore, notwithstanding that Plaintiffs' allegations fall short of pleading any cognizable constitutional violations, Plaintiffs' exhibits as attached to the complaint appear to contradict some of the assertions within the body of the complaint. For example, a police report completed by Officer Spurling states that Defendant Schneider "gave [Martin] the option to come and get all of her property due to her abandoning it. [Martin] did not want to go and pick up the property without compensation because she did not want to give up her tenant rights." Defendant Schneider "has told [Martin] he could move her property to a different location for storage, and then she can pick it up from there." (Doc. 1 at 119).

Because Plaintiffs fail to adequately plead an essential element of a section 1983 cause of action (*e.g.*, action under color of state law), the Court does not have federal question jurisdiction

over the claim. *Caterpillar, Inc.*, 482 U.S. at 392. Though it is difficult for the Court to envision a scenario where Plaintiffs may plead any cognizable section 1983 claims under the facts as currently alleged, nonetheless, the Court will provide a summary of the applicable governing law and grant Plaintiffs leave to amend their complaint, assuming they can do so in good faith.

### i.  First Amendment

Claims asserting denial of access to the courts generally fall into two categories: "(1) claims arising from an official frustrating a plaintiff from preparing and filing a lawsuit in the present, *i.e.*, a forward-looking claim, or (2) claims arising from an official causing the loss of a meritorious claim that can no longer be pursued, *i.e.*, a backward-looking claim." *Israel v. Gibbs*, No. 2:21-CV-2129 AC P, 2023 WL 2239336, at *3 (E.D. Cal. Feb. 27, 2023) (citing *Christopher v. Harbury*, 536 U.S. 403, 412-415 (2002)).

"Forward-looking claims allege official action is hindering the preparation and filing of an action at the present time. The objective of such a claim is to remove the hindrance and 'place the plaintiff in a position to pursue a separate claim once the frustrating condition has been removed.'" *Robinson v. County of Shasta*, No. 2:14-CV-02910-KJM, 2015 WL 5436716, at *4 (E.D. Cal. Sept. 15, 2015) (citing *Christopher*, 536 U.S. at 413). When asserting a backward-looking claim, a plaintiff must show "1) the loss of a 'non-frivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Israel*, 2023 WL 2239336, at *3 (citing *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009)).

In support of a claimed First Amendment violation here, Plaintiffs plead in conclusory fashion "[c]oercion to forfeit legal claims through property hostage-taking" and use of "false police reports." (Doc. 1 at ¶¶ 152, 188). However, no specific legal claims allegedly forfeited are identified and no specific actions by Defendants are alleged to have hindered Plaintiffs in preparing or filing this (or any other) action. As such, Plaintiffs fail to cognizably plead a First Amendment violation.

### ii.  Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Johnson*, 466 U.S. 109, 113 (1984). The Supreme Court has "consistently construed this protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* (quotation and citation omitted).

Plaintiffs allege that Defendants violated their rights under the Fourth Amendment by "illegally locking Plaintiffs out of their home and detaining all their possessions." (Doc. 1 ¶ 188). But there is no allegation that the party that allegedly locked-out and detained Plaintiffs' possessions (Castillo) acted either as a government agent or at the government's behest in a manner that could satisfy the color of state law requirement under section 1983. Further, there are no allegations that the party who allegedly acted under the color of state law (Schneider) meaningfully interfered with Plaintiffs' property rights sufficient for his actions to constitute a seizure. Schneider neither physically possessed Plaintiffs' belongings nor prevented Plaintiffs from seeking legal recourse to regain their possessions. Indeed, to the contrary, according to Plaintiffs' filings, Castillo and Schneider each have offered to arrange for Plaintiffs to take possession of their belongings. *Id.* ¶¶ 119, 126; (Doc. 16 at 2).

### iii.   Fourteenth Amendment

#### 1.   Due Process

A claim brought pursuant to the Due Process Clause of the Fourteenth Amendment may be either procedural or substantive. "To sustain a procedural due process claim, a plaintiff must plausibly allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. By contrast, substantive due process claims focus on whether a given liberty interest may be infringed at all, no matter what process is provided." *Alexander v. County of San Mateo*, No. 20-CV-05179-RS, 2020 WL 6577499, at *2 (N.D. Cal. Oct. 6, 2020) (quotations omitted; citing *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018), & *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008)).

16

Plaintiffs allege that Defendants violated their rights under the Due Process Clause by threatening legal process "to maintain illegal detention of property without due process, violating the Fourteenth Amendment" and "by seizing all of Plaintiffs' property without notice or hearing." (Doc. 1 ¶¶ 151, 152, 188). It does not appear that any such claim could be cognizable even if Plaintiffs satisfied the state actor element of section 1983 claim. First, merely threatening legal action—without initiating any proceedings to enforce the demand—does not deprive any interest cognizable under the Due Process Clause. *See Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011). Second, a state actor's deprivation of another's property is not cognizable under the Due Process Clause where "adequate state post-deprivation remedies are available," even where the deprivation was intentional. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Ninth Circuit has held that California law "provides an adequate post-deprivation remedy for any property deprivations" pursuant to the California Government Claims Act. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).

### 2.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440–441 (1985) (quoting U.S. Const. amend. XIV).

"To state a claim, [a] [p]laintiff must show that [d]efendants intentionally discriminated against [them] based on [their] membership in a protected class [] or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose." *Adams v. Davis*, No. 1:20-CV-01198-EPG PC, 2020 WL 6130959, at *3 (E.D. Cal. Oct. 19, 2020) (citing, *inter alia*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), & *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)), *report and recommendation adopted*, 2021 WL 534953 (Feb. 12, 2021). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

Plaintiffs' equal protection claim is based on conclusory allegations that Defendants

"target[ed] Plaintiffs based on their disabilities" and engaged in "[d]iscrimination based on disability status and pro se representation." (Doc. 1 ¶¶ 152, 188). The complaint is devoid of facts that would permit the drawing of any inference that Defendants acted with an intent or purpose to discriminate against Plaintiffs because of their alleged disabled status.

### iv. Municipal Liability

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long*, 442 F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]"). Finally, a municipality may be liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802-803 (9th Cir. 2018).

Thus, to establish a § 1983 claim for municipal liability, Plaintiffs must show: (1) that they possessed a constitutional right of which they were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to Plaintiffs' constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

1    Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations

2    regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth,

3    allegations in a complaint or counterclaim may not simply recite the elements of a cause of action,

4    but must contain sufficient allegations of underlying facts to give fair notice and to enable the

5    opposing party to defend itself effectively. Second, the factual allegations that are taken as true

6    must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

7    party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez

8    v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216

9    (9th Cir. 2011)).

10    **C. ADA Claims**

11    The ADA was enacted in response to a "compelling need" for a "clear and comprehensive

12    national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v.

13    Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids

14    discrimination against disabled individuals in major areas of public life, among them employment

15    (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*. To state a

16    claim under Title II of the ADA, a plaintiff must assert that (1) they are "an individual with a

17    disability;" (2) they are "otherwise qualified to participate in or receive the benefit of some public

18    entity's services, programs, or activities;" (3) they were "either excluded from participation in or

19    denied the benefits of the public entity's services, programs, or activities, or [were] otherwise

20    discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or

21    discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259,

22    1265 (9th Cir. 2004).

23    To recover compensatory damages under Title II, a plaintiff must establish intentional

24    discrimination on the part of the defendant. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674

25    (9th Cir. 1998), *as amended* (October 8, 1998). "Intentional discrimination" involves "deliberate

26    indifference" to a disabled person's need for an accommodation. *Duvall v. County of Kitsap*, 260

27    F.3d 1124, 1138-1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). To establish

28    "deliberate indifference," a plaintiff must show that the public entity had notice that an

19

1    accommodation was required and failed to act as a result of conduct involving an element of

2    deliberateness. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).

3        Here, Plaintiff Martin alleges that she has post-traumatic stress disorder, anxiety disorder,

4    major depressive disorder, attention deficit hyperactivity disorder, autism spectrum disorder,

5    pneumonia, and inflammation. (Doc. 1 ¶ 29). Plaintiff Borges states that he has post-traumatic

6    stress disorder, anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder,

7    and experienced a hemorrhagic stroke in 2016. *Id.* ¶ 31. Thus, for the purposes of screening the

8    complaint, Plaintiffs sufficiently allege that they are individuals with disabilities.

9        However, Plaintiffs fail to cognizably allege exclusion or denial of services, programs, or

10   activities, or other discrimination resulting from their disabilities. Plaintiffs allege that Kern County

11   Superior Court violated Title II of the ADA due to their "implementing a 43-day complete e-filing

12   shutdown" without emergency provisions, from August 25, 2025, to October 6, 2025, unlike other

13   state courts who implemented far shorter maintenance windows. (Doc. 1 ¶¶ 327, 333, 336, 338).

14   But the County of Kern is not a named party in this action. *See Serris v. Chastaine*, No. 2:22-CV-

15   0434-JAM-CKD PS, 2022 WL 2133900, at *3 (E.D. Cal. June 14, 2022) (noting that, for Title II

16   claims against Solano County Superior Court, the proper defendant was the County of Solano).

17   This fact, by itself, results in the failure of Plaintiffs to bring cognizable Title II claims.

18       Further, Plaintiffs do not adequately allege what reasonable accommodations they were

19   denied. Plaintiffs merely assert that they could not electronically file documents with the Kern

20   County Superior Court for a 43-day period. Plaintiffs assert, in a conclusory fashion, that this period

21   "exclusively targeted self-represented and disabled litigants while maintaining full attorney

22   access." (Doc. 1 ¶ 121). Plaintiffs do not provide whether they requested any accommodations from

23   Kern County Superior Court for this period, when and how such accommodations were requested,

24   and whether they were denied. Plaintiffs allege only, without specificity, that they "sought

25   accommodations in January 2025 for filing assistance," but this predates the 43-day period by at

26   least six months. *Id.* ¶ 339.

27       Moreover, Plaintiffs allege that the lack of electronic filing during the 43-day period

28   prevented them from filing any complaint for emergency relief, as they could not physically travel

to file paper documents, and no "meaningful alternatives were provided for disabled individuals unable to physically appear." *Id.* ¶¶ 328-329. Plaintiffs do not address whether mail filing was available and, if so, why they were unable to use the mails.

Thus, Plaintiffs fail to bring any cognizable claims pursuant to the ADA. *See Hiramanek v. Clark*, No. 5:13-CV-00228-RMW, 2016 WL 687974, at *11 (N.D. Cal. Feb. 19, 2016) ("plaintiff has presented no admissible evidence to suggest that he was denied access to filing on the basis of his disability or that mailing his court filings would have been unreasonable … while e-filing in a wider variety of cases might make life easier for litigants, the Superior Court's lack of e-filing cannot form the basis for ADA liability in this case"); *Hiramanek v. California Jud. Council*, No. 5:15-CV-04377-RMW, 2016 WL 6427870, at *2 (N.D. Cal. Oct. 31, 2016), *aff'd sub nom. Hiramanek v. Jud. Council of California*, 754 F. App'x 580 (9th Cir. 2019) ("Nor has plaintiff explained how defendants' existing filing mechanisms are insufficient to accommodate his alleged disabilities."); *see also Serris*, 2022 WL 2133900, at *4 ("Moreover, conclusory allegations that plaintiff has not received adequate accommodations do not suffice to state a claim. This includes the allegations that unspecified and undescribed ADA requests were denied, ignored, or not promptly addressed.").

### D.  Fair Housing Act Claims

The Fair Housing Act ("FHA") forbids discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of … that person[.]" 42 U.S.C. § 3604(f)(2). A plaintiff may proceed with a discrimination claim pursuant to the FHA under a theory of disparate impact, disparate treatment, or failure to make reasonable accommodations. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).

"To establish a violation of the Fair Housing Act under the disparate impact theory, the initial burden is on the plaintiff to prove a prima facie showing of discrimination." *A.H.D.C. v. City of Fresno, Cal.*, No. CIV-F-97-5498 OWW, 2004 WL 5866233, at *14 (E.D. Cal. Mar. 9, 2004) (emphasis omitted; citing, *inter alia*, *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997)), *aff'd sub nom. Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir.

1    2006).

2    "To plead a disparate treatment claim, a plaintiff must allege facts showing that: '(1)

3    plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory

4    conduct, plaintiff has suffered a distinct and palpable injury.'" *Ortiz v. Mull*, No. 2:25-CV-0028-

5    DC-CKD (PS), 2025 WL 2098594, at *4 (E.D. Cal. July 25, 2025) (citing *Harris v. Itzhaki*, 183

6    F.3d 1043, 1051 (9th Cir. 1999)).

7    "To plead a failure to accommodate claim, a plaintiff must allege facts demonstrating that

8    (1) he suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) the defendants knew or

9    reasonably should have known of his handicap; (3) accommodation of the handicap 'may be

10    necessary' to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the

11    defendants refused to make such accommodation." *Id.* (citing *United States v. Cal. Mobile Home

12    *Park Mgmt.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

13    Here, Plaintiffs make only two cursory references to the Fair Housing Act and assert no

14    specific facts to establish a claim thereunder. *See* (Doc. 1 at 1; *id.* ¶ 13). Thus, Plaintiffs fail to plead

15    any cognizable claims under the FHA.

16    **E.  State Law Claims**

17    Plaintiffs include brief and cursory references to various state law causes of action,

18    including California Civil Code § 52.1 (the "Bane Act"), California Civil Code § 51 (the "Unruh

19    Act"), infliction of emotional distress, among others. Additionally, the facts as asserted by Plaintiffs

20    as well as attached exhibits to the complaint appear to assert a possible state law claim pursuant to

21    California Civil Code § 789.3. *See* (Doc. 1 at 123).

22    Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

23    jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are

24    so related to claims in the action within such original jurisdiction that they form part of the same

25    case or controversy under Article III of the United States Constitution," except as provided in

26    subsections (b) and (c). Though the Court may exercise supplemental jurisdiction over state law

27    claims, Plaintiffs must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

28    "When a district court 'has dismissed all claims over which it has original jurisdiction,' it

'may decline to exercise supplemental jurisdiction' over remaining state law claims." *Pell v. Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(a)). Indeed, the Court generally "should decline the exercise of jurisdiction" if "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)); *see id.* at 350 n.7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Because the undersigned has concluded that either the Court lacks subject matter jurisdiction over Plaintiffs' claims or the complaint does not state any cognizable claims pursuant to 42 U.S.C. § 1983, the Court will not screen Plaintiffs' claims brought pursuant to state law. In any amended complaint, Plaintiffs must allege any accompanying state law claims pursuant to the applicable standard under state law. *See Maez v. Maez*, No. 1:22-CV-00901-BAM, 2022 WL 4110261, at *4 (E.D. Cal. Sept. 8, 2022), *report and recommendation adopted*, 2022 WL 17406536 (Dec. 2, 2022) ("To the extent Plaintiff's amended complaint attempts to assert primarily state law claims, the Court declines to screen those claims in the absence of a cognizable claim for relief under federal law.").

## VIII.   CONCLUSION AND ORDER

In sum, Plaintiffs have failed to demonstrate that this Court properly may exercise subject matter jurisdiction over their claims and have not sufficiently pleaded any cognizable claims under federal law. Notwithstanding the foregoing, under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiffs leave to amend their complaint only to the extent they can, in good faith, remedy the deficiencies noted herein. *Lopez*, 203 F.3d at 1126-31. Alternatively, Plaintiffs may choose not to amend and, instead, file a notice of voluntary dismissal.

If Plaintiffs elect to proceed with this action by filing an amended complaint, the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* Local Rule

220. The **amended complaint must be complete in itself without reference to the prior or superseded pleading**. Once the amended complaint is filed, the original pleading no longer serves any function in the case.

Thus, in any amended complaint, **Plaintiffs must re-plead all elements of their claims**, including all relevant facts, even the ones not addressed by this screening order. As set forth above, **exhibits attached to a complaint are not substitutes for factual allegations**. *Ford*, 2024 WL 5081635, at *1.

Based upon the foregoing, it is HEREBY ORDERED that:

    1.   Plaintiffs are granted leave to amend their complaint.

    2.   **Within 21 days** from the date of service of this order, Plaintiffs must file either:

        a.   an amended complaint curing the deficiencies identified by the Court in this order; ***or***

        b.   a notice of voluntary dismissal.

    **If Plaintiffs fail to comply with this order, the undersigned will recommend that this action be dismissed for their failure to obey the Court's orders and failure to prosecute.**

IT IS SO ORDERED.

Dated:   **September 22, 2025**        _____

                                     UNITED STATES MAGISTRATE JUDGE