UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICE LAZAE MARTIN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CASTILLO, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-01123-KES-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS PLAINTIFFS' COMPLAINT WITH LEAVE TO AMEND<br><br>(Docs. 1, 22)<br><br>**14-DAY DEADLINE** |

Plaintiffs Felice Lazae Martin and Hector Joseph Borges (collectively, "Plaintiffs"), proceeding pro se and *in forma pauperis* ("IFP"), initiated this action with the filing of a complaint on September 4, 2025. (Doc. 1).

On September 22, 2025, following the completion of a preliminary review of Plaintiffs' complaint pursuant to 28 U.S.C. § 1915, the undersigned entered an order directing Plaintiffs to file a response. (Doc. 22). In short, the undersigned determined that Plaintiffs had failed to demonstrate that this Court properly may exercise subject matter jurisdiction over their claims and did not sufficiently plead any cognizable claims under federal law. The undersigned directed Plaintiffs to file within 21 days either an amended complaint curing the deficiencies noted in the screening order or a notice of voluntary dismissal. More than 45 days have passed and Plaintiffs have filed neither an amended complaint nor a notice of voluntary dismissal. Accordingly, the undersigned presumes Plaintiffs wish to stand on their complaint as screened. For the reasons that follow, the undersigned recommends that Plaintiffs' complaint be dismissed with leave to amend.

## I. SUMMARY OF THE COMPLAINT[1]

According to the allegations of their complaint, on May 23, 2024, Plaintiffs "entered into a month-to-month rental agreement" with landlord Defendant Castillo for a residential property in Pine Mountain Club, California. (Doc. 1 ¶ 38; *id.* at 102). Plaintiffs paid through October 2024 for six months of tenancy. *Id.* ¶ 38. Defendant Castillo "failed to disclose known, pre-existing water damage and structural issues that would create toxic mold conditions, despite actual knowledge of these defects from prior incidents." *Id.* ¶ 39. The property "lacked functional heating" from the beginning of the tenancy, resulting in temperatures reaching 30 to 40 degrees Fahrenheit indoors during the winter months. *Id.* ¶ 40 (citing Ex. I[2]). Castillo "admitted during a phone call that water intrusion was a pre-existing issue he believed had been fixed but clearly had not been resolved." *Id.* ¶ 41 (citing Ex. BB). The combination of these circumstances "created optimal conditions for toxic mold growth," which would result in Plaintiffs' asserted respiratory illnesses. *Id.* ¶ 42.

Between June 2024 and November 2024, Plaintiffs obtained multiple repair quotes at their own expense regarding said conditions, documented declining air quality using an air purifier which routinely returned "poor" quality readings, spent "approximately $1,500 on stopgap solutions," maintained communication with Castillo to assist in finding solutions, and "[p]rovided ongoing updates about deteriorating conditions." *Id.* ¶ 43 (citing Ex. J). During this period, Castillo "repeatedly claimed repair quotes were 'too expensive' and took no remedial action." *Id.* ¶ 44 (citing Ex. AA). "Professional service providers who assessed the property confirmed water intrusion levels that would generate hazardous mold within walls, warning of serious health risks." *Id.* ¶ 45 (citing Ex. K). Despite repeated warnings and complaints, Castillo "refused all remediation" and "continued to list the [property] for short-term rental on Airbnb throughout [Plaintiffs]' tenancy" and in November 2024, he "inquired about renting it for Thanksgiving despite

---

[1] The Court accepts Plaintiffs' allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

[2] No such exhibit is attached to the complaint. The complaint appears to include a cover page for an Exhibit E, but no accompanying exhibit therefor, and does not attach any exhibits following Exhibit D. Plaintiffs filed on September 11, 2025, a notice to the Court in which they represent that they filed an incomplete exhibit package and that exhibits may be referenced incorrectly. *See* (Doc. 19). Regardless, the Court will include Plaintiffs' citations thereto in its summary of the allegations within the complaint.

2

knowing the home had chronic water intrusion and no functioning heat … ." Plaintiff Martin came down with "pneumonia in late November 2024, a condition her treating physicians linked to toxic mold exposure in the home." *Id.* ¶¶ 46, 51.

By October 2024, Plaintiff Martin "became bedridden" due to autistic burnout, catatonia, and neurological effects from mold poisoning. *Id.* ¶ 47. "[M]ycotoxin exposure caused progressive neurological deterioration in both [Plaintiffs]." *Id.* ¶ 48. "Air quality measurements confirmed the toxic environment," and the "only heated room in the house was directly adjacent to the toxic mold source … ." *Id.* ¶¶ 49-50. "In mid-December 2024, [Plaintiff Martin] was diagnosed with pneumonia" and sought "formal medical testing." *Id.* ¶ 52 (citing Ex. D). Defendant Castillo claimed "repairs were 'too expensive' and refused remediation." *Id.* ¶ 53. Plaintiffs expressed to Defendant Castillo that they wished to "relocate safely" and "offered to seek alternative housing without requesting moving assistance, asking only to be excused from rent payments during the search period … as they were being forced into a constructive eviction … ." *Id.* ¶¶ 57-58 (citing Cal. Civ. Code §§ 1942, 1942.4).

"[Plaintiffs] paid rent through October 23, 2024, and ceased payment only when [Plaintiff Martin] became too ill from pneumonia to work and earn income." Plaintiffs did not pay rent in December 2024 and "spent $1,500 on air purifiers and mold remediation products" in anticipation of a visit from Plaintiff Martin's mother. Plaintiffs could not afford to immediately relocate and "believed the mold might be limited to visible areas near windows and water fixtures." *Id.* ¶¶ 59-61. Plaintiff Martin's mother "immediately experienced adverse health effects" upon arrival. *Id.* ¶ 62. Defendant Castillo issued a rent demand on December 31, 2024. *Id.* ¶¶ 64, 66.

On January 3, 2025, Plaintiffs "commenced evacuation" from the property, "removing essential items while wearing protective masks." On January 6, 2025, Plaintiffs retrieved "essential belongings before ceasing regular access to the property" but "maintained continuous intent to return for remaining property once health permitted and never abandoned their tenancy." *Id.* ¶ 68 (citing Ex. D). On January 11, 2025, Plaintiff Martin sent Defendant Schneider (Castillo's alleged attorney, *see* Doc. 1 at ¶ 6) a formal preservation of evidence notice, "warning that any unauthorized remediation, repairs, or alterations to the property would constitute spoliation of evidence in

1    ongoing legal matters." Defendants "refused certified mail and evaded written
2    acknowledgment … ." *Id.* ¶ 72. Between January 7 and 15, 2025, Defendants "changed all locks"
3    on the property. *Id.* ¶ 73. On January 16, 2025, Plaintiffs returned to attempt to retrieve additional
4    belongings but found themselves locked out of the property. *Id.* ¶ 74 (citing Ex. F). On January 22,
5    2025, Plaintiffs sent a demand letter via certified mail, which was refused by Defendants and
6    "returned unclaimed on March 5, 2025." *Id.* ¶ 76-77 (citing Ex. G).

7    Defendant Schneider rejected all demands, mischaracterized said demands, mocked
8    Plaintiffs' disabilities, and attempted to coerce Plaintiffs by "conditioning property return on
9    acceptance of 'abandonment' narrative." *Id.* ¶ 78. On January 16, 2025, Plaintiffs reported the
10   lockout to the Kern County Sheriff's Office ("KCSO"), asserting that Deputy Curiel "improperly
11   [categorized] the matter as 'civil' despite California Attorney General Information Bulletin 2022-
12   DLE-05 explicitly mandating criminal enforcement of illegal lockouts … ." *Id.* ¶ 79 (Ex. B).
13   Plaintiffs' "subsequent attempts to correct this misclassification triggered systematic obstruction,
14   with Sergeant Tafoya (Badge #1166) employing circular logic to discourage filing of a criminal
15   report, requiring [Plaintiff Martin] to request seven times before reluctantly opening the
16   investigation." *Id.* ¶ 81. "Senior Detective Sanchez then assumed control of the investigation,
17   demanding [Plaintiffs] define applicable penal codes despite being provided [Bulletin 2022-DLE-
18   05]." *Id.* ¶ 82. Senior Detective Sanchez "claimed inability to identify criminal violations" after
19   Plaintiffs submitted evidence through KCSO's portal and did not "facilitate [Plaintiffs'] direct
20   submission to the District Attorney" after Plaintiffs' "assertion of their legal rights." *Id.* ¶¶ 83-85.

21   After Plaintiffs initiated an internal affairs investigation and "personally called Deputy
22   Spurling (Badge #1619) at Sergeant Orona's suggestion … did she produce a Supplemental Report
23   on May 16, 2025, adding felony violations …" *Id.* ¶ 86 (citing Exs. V, C). Plaintiffs assert that law
24   enforcement deliberately refused "to enforce California Penal Code §§ [418, 487, and 518] despite
25   clear probable cause" and made contact while in off-duty status with Defendant Castillo, resulting
26   in exposure of "systematic denial of [Plaintiffs'] constitutional rights." *Id.* ¶ 87 (citing Ex. B).
27   Plaintiffs allege that the Kern County District Attorney's Office has "refused prosecution" without
28   legal justification. *Id.* ¶ 88. Plaintiffs provide that their property remains detained at the Pine

1  Mountain Club property and Defendant Schneider's communications with Plaintiffs "constitute a
2  pattern of professional misconduct." *Id.* ¶¶ 91-92.

3  Plaintiffs assert in their complaint numerous causes of action arising from violations of their
4  rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, pursuant to 42
5  U.S.C. § 1983 and *Monell v. Department of Social Services*[3], violations of several criminal statutes,
6  and violations of state law. *Id.* at 38-66, 70. Plaintiffs separately assert that Kern County Superior
7  Court shut down its electronic filing service from August 25, 2025, to October 6, 2025, resulting
8  in Plaintiffs inability to file a complaint for emergency relief and violating 28 C.F.R. § 35.160, 42
9  U.S.C. § 1983, and the Americans with Disabilities Act ("ADA"). *Id.* at 79-82. Plaintiffs allege
10 resulting physical and psychological harm. *See id.* ¶¶ 63, 65, 67, 69, 89, 101, 102-104.

## II.   DISCUSSION

Federal courts are courts of limited jurisdiction and may hear only those cases authorized by federal law. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is a threshold inquiry, and "[f]ederal courts are presumed to lack jurisdiction, 'unless the contrary appears affirmatively from the record.'" *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). Without jurisdiction, the district court cannot decide the merits of a case or order any relief and must dismiss the case. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court's jurisdiction may be established in one of two ways: actions arising under federal law or those between citizens of different states in which the alleged damages exceed $75,000. 28 U.S.C. §§ 1331, 1332. "Subject-matter jurisdiction can never be waived or forfeited," and "courts are obligated to consider *sua sponte*" subject matter jurisdiction even when not raised by the parties. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

A case "arises" under federal law either where federal law itself creates the cause of action or where the vindication of a state law right would "necessarily [turn] on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)).

---
[3] 436 U.S. 658 (1978).

5

1    Stated otherwise, a claim arises under federal law if the complaint cognizably pleads that federal
2    law created the claim asserted or the plaintiff's right to relief necessarily depends on resolving a
3    substantial question of federal law. *Franchise Tax Bd.*, 463 U.S. at 27-28.

4    Courts determine whether they have federal question jurisdiction by applying the "well-
5    pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[F]ederal
6    jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly
7    pleaded complaint." *Id*. Federal question jurisdiction does not arise from the "mere presence of a
8    federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804,
9    813 (1986); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)
10   (holding that passing references to federal issues are not a "password opening federal courts to any
11   state action embracing a point of federal law").

### A. Preliminary Matters

As a preliminary matter, some of Plaintiffs' causes of action invoke purported violations of state criminal law, namely California Penal Code §§ 418, 487(a), 518, and 523, as well as false imprisonment, though Plaintiffs do not cite to a specific statute for the latter. (Doc. 1 at 61-66, 70).

To the extent Plaintiffs seek relief pursuant to criminal law, references to criminal statutes do not state a claim for relief in a section 1983 proceeding. *See Clinton v. Allison*, No. 3:23-cv-01471-CAB-SBC, 2024 WL 1859956, at *10 (S.D. Cal. Apr. 29, 2024) (discussing plaintiff's references to federal and state criminal statutes and finding "criminal statutes do not give rise to civil liability under section 1983"); *Jones v. County of Sonoma*, No. 23-cv-02730-CRB, 2024 WL 1354496, at *4 (N.D. Cal. Mar. 29, 2024) (finding plaintiff "fails to state a claim under 18 U.S.C. § 1503 because the statute only applies to criminal cases and does not provide a civil cause of action"); *Bland v. Gross*, No. 1:20-cv-00542-DAD-BAM (PC), 2021 WL 120964, at *1 (E.D. Cal. Jan. 13, 2021) ("'Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.'") (quoting *Kennedy v. World Sav. Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at *7 (N.D. Cal. Apr. 21, 2015)); *Rope v. Facebook, Inc.*, No. CV 14-4900 UA, 2015 WL 13918858, at *2 (C.D. Cal. Oct. 26, 2015) (same); *Loadholt v. Obama*, No. 2:13-cv-2607-MCE-EFB PS, 2015 WL 848549, at *3 (E.D. Cal. Feb. 26, 2015)

1  (same). Accordingly, Plaintiffs are not entitled to any relief pursuant to these criminal statutes.

2  Additionally, Plaintiffs attach to their complaint voluminous exhibits. Although for the purposes of the initial screening of Plaintiffs' complaint the Court gave consideration to the exhibits attached thereto, Plaintiffs are advised that the Court may elect to disregard factual allegations that are not specifically pled in the complaint itself. It is not sufficient that such allegations are included in attachments to the complaint. *See Lopez v. Bank of Am.*, No. 1:11-CV-00485-LJO, 2011 WL 1134671, at *2 (E.D. Cal. Mar. 28, 2011) (explaining that "a plaintiff is well advised to state fully the facts supporting his claims against the defendants and to refrain from attaching exhibits … Plaintiff is cautioned that, in determining whether a complaint states cognizable claims, the Court's duty is to evaluate the complaint's factual allegations, not to wade through exhibits"); *see also Ford v. Sanchez-Galvin*, No. 24-CV-1025 JLS (KSC), 2024 WL 5081635, at *1 (S.D. Cal. Dec. 11, 2024) ("Exhibits attached to a complaint are not a substitute for factual allegations.") (internal quotation and citation omitted). In any amended complaint, Plaintiffs must include factual allegations in the body of their complaint and refrain from attaching voluminous exhibits.

**B.  Section 1983**

To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)). This requires the plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights. *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

Here, Plaintiffs fail to name any individuals as defendants who acted under color of state law. According to Plaintiffs' allegations, Defendant Castillo is a private individual who rented a private property to Plaintiffs and Defendant Schneider is an attorney licensed to practice law in California who was retained by Defendant Castillo and communicated with Plaintiffs in regards to the property. (Doc. 1 at 10, 24). Neither individual is an appropriate defendant for a section 1983 claim. *See Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) ("Section 1983

'excludes from its reach merely private conduct, no matter how discriminatory or wrong.'") (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)); *Acord v. Champions Recovery Alternatives*, No. 1:17-CV-01145-LJO-EPG, 2018 WL 2117383, at *2 (E.D. Cal. May 8, 2018) (same).

In some circumstances, the actions of a private actor may render him liable under section 1983. Thus, a private party "proceeds under the color of state law for purposes of a § 1983 claim where 'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Wexler v. City of San Diego*, No. 24-cv-137-DMS-DDL, 2024 WL 4668152, at *8 (S.D. Cal. Nov. 4, 2024) (quoting *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)). Courts apply various tests to determine whether a plaintiff adequately has pleaded defendants acted under the color of state law. *Id.* Relevant here[4], pursuant to the "public function test," a private individual may be deemed a state actor under section 1983 "when they perform a public function that has been 'traditionally the exclusive prerogative of the State.'" *Acord*, 2018 WL 2117383, at *2 (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982)). Pursuant to the "joint action test," a private individual may be deemed a state actor under section 1983 "if he or she was part of a conspiracy or was a 'willful participant in [other] joint action' with a state actor that caused the constitutional violation." *Id.* at *3 (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). To prove such a conspiracy, "an agreement or 'meeting of the minds' must be shown … a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Id.* (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) & *Franklin*, 312 F.3d at 445). The Ninth Circuit requires a "substantial degree of cooperation" between the state actor and private citizen before finding any such conspiracy. *Franklin*, 312 F.3d at 445.

The complaint fails to plead facts sufficient to render either Defendant liable under the "public function test" or the "joint action test." Plaintiffs plead no facts supportive of the "public function test," other than the mere fact that Defendant Schneider is an attorney licensed in

---

[4] Because Plaintiffs' allegations do not implicate two of the recognized tests – the "state compulsion test" and the "governmental nexus test" – the Court does not reach those here. *See id.* at *9-10.

1    California. (Doc. 1 ¶ 149). This fact alone does not render Defendant Schneider a state actor.

2    As to the "joint action test," Plaintiffs advance the conclusory allegations that "the Kern County District Attorney—weaponizing prosecutorial discretion against victims—has refused prosecution for 175+ days without legal justification. This selective non-prosecution, particularly protecting attorney [Schneider] from extortion charges, demonstrates the state's complicity in the constitutional violations." *Id.* ¶ 122. Plaintiffs set forth no facts to support such claims, notably as to the nature of the conspiracy, any "meeting of the minds" between Defendant Schneider and state actors, and the constitutional rights to be violated therefrom.

As to the latter, Plaintiffs make conclusory allegations relating to possible violations of constitutional rights. For example, Plaintiffs assert that Defendant Castillo used "legal process threats to maintain illegal detention of property without due process, violating the Fourteenth Amendment[.]" (Doc. 1 ¶ 151). The only other support Plaintiffs advance consists of bare allegations, *e.g.*, "[c]oercion to forfeit legal claims through property hostage-taking," "[c]ontinued detention of all worldly possessions without warrant or court order," "[p]roperty detention without legal process or hearing," and "[d]iscrimination based on disability status and pro se representation." *Id.* ¶ 152. Plaintiffs, thus, assert vague and sweeping claims with little to no factual support.

Plaintiffs' conclusory allegations suggesting complicity between or interference by either Defendant Castillo or Defendant Schnieder and law enforcement in connection with any investigation by law enforcement of Plaintiffs' complaints does not adequately establish state action by Defendants. Thus, for instance, "a private individual is not transformed into a state actor by: "merely complaining to the police," *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); "providing false information to the police," *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2008); "ask[ing] that an individual be arrested," *Hodges v. Holiday Inn Select*, No. 07-cv-1169 OWW TAG, 2008 WL 1945532, at *4 (E.D. Cal. May 1, 2008) (citing *Collins*, 878 F.2d at 1155); or making a "request for the police to perform their peace-keeping functions," *see Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir. 1983).

Furthermore, notwithstanding that Plaintiffs' allegations fall short of pleading any

9

1 cognizable constitutional violations, Plaintiffs' exhibits as attached to the complaint appear to
2 contradict some of the assertions within the body of the complaint. For example, a police report
3 completed by Officer Spurling states that Defendant Schneider "gave [Martin] the option to come
4 and get all of her property due to her abandoning it. [Martin] did not want to go and pick up the
5 property without compensation because she did not want to give up her tenant rights." Defendant
6 Schneider "has told [Martin] he could move her property to a different location for storage, and
7 then she can pick it up from there." (Doc. 1 at 119).

8 Because Plaintiffs fail to adequately plead an essential element of a section 1983 cause of
9 action (*e.g.*, action under color of state law), the Court does not have federal question jurisdiction
10 over the claim. *Caterpillar, Inc.*, 482 U.S. at 392. Though it is difficult for the Court to envision a
11 scenario where Plaintiffs may plead any cognizable section 1983 claims under the facts as currently
12 alleged, nonetheless, the Court will provide a summary of the applicable governing law and
13 recommend granting Plaintiffs leave to amend their complaint, assuming they can do so in good
14 faith.

### *i. First Amendment*

16 Claims asserting denial of access to the courts generally fall into two categories: "(1) claims
17 arising from an official frustrating a plaintiff from preparing and filing a lawsuit in the present, *i.e.*,
18 a forward-looking claim, or (2) claims arising from an official causing the loss of a meritorious
19 claim that can no longer be pursued, *i.e.*, a backward-looking claim." *Israel v. Gibbs*, No. 2:21-CV-
20 2129 AC P, 2023 WL 2239336, at *3 (E.D. Cal. Feb. 27, 2023) (citing *Christopher v. Harbury*,
21 536 U.S. 403, 412-415 (2002)).

22 "Forward-looking claims allege official action is hindering the preparation and filing of an
23 action at the present time. The objective of such a claim is to remove the hindrance and 'place the
24 plaintiff in a position to pursue a separate claim once the frustrating condition has been removed.'"
25 *Robinson v. County of Shasta*, No. 2:14-CV-02910-KJM, 2015 WL 5436716, at *4 (E.D. Cal. Sept.
26 15, 2015) (citing *Christopher*, 536 U.S. at 413). When asserting a backward-looking claim, a
27 plaintiff must show "1) the loss of a 'non-frivolous' or 'arguable' underlying claim; 2) the official
28 acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not

otherwise available in a future suit." *Israel*, 2023 WL 2239336, at *3 (citing *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009)).

In support of a claimed First Amendment violation here, Plaintiffs plead in conclusory fashion "[c]oercion to forfeit legal claims through property hostage-taking" and use of "false police reports." (Doc. 1 at ¶¶ 152, 188). However, no specific legal claims allegedly forfeited are identified and no specific actions by Defendants are alleged to have hindered Plaintiffs in preparing or filing this (or any other) action. As such, Plaintiffs fail to cognizably plead a First Amendment violation.

### ii. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Johnson*, 466 U.S. 109, 113 (1984). The Supreme Court has "consistently construed this protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* (quotation and citation omitted).

Plaintiffs allege that Defendants violated their rights under the Fourth Amendment by "illegally locking Plaintiffs out of their home and detaining all their possessions." (Doc. 1 ¶ 188). But there is no allegation that the party that allegedly locked-out and detained Plaintiffs' possessions (Castillo) acted either as a government agent or at the government's behest in a manner that could satisfy the color of state law requirement under section 1983. Further, there are no allegations that the party who allegedly acted under the color of state law (Schneider) meaningfully interfered with Plaintiffs' property rights sufficient for his actions to constitute a seizure. Schneider neither physically possessed Plaintiffs' belongings nor prevented Plaintiffs from seeking legal recourse to regain their possessions. Indeed, to the contrary, according to Plaintiffs' filings, Castillo and Schneider each have offered to arrange for Plaintiffs to take possession of their belongings. *Id.* ¶¶ 119, 126; (Doc. 16 at 2).

### iii. Fourteenth Amendment

#### 1. Due Process

A claim brought pursuant to the Due Process Clause of the Fourteenth Amendment may be either procedural or substantive. "To sustain a procedural due process claim, a plaintiff must plausibly allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. By contrast, substantive due process claims focus on whether a given liberty interest may be infringed at all, no matter what process is provided." *Alexander v. County of San Mateo*, No. 20-CV-05179-RS, 2020 WL 6577499, at *2 (N.D. Cal. Oct. 6, 2020) (quotations omitted; citing *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018), & *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008)).

Plaintiffs allege that Defendants violated their rights under the Due Process Clause by threatening legal process "to maintain illegal detention of property without due process, violating the Fourteenth Amendment" and "by seizing all of Plaintiffs' property without notice or hearing." (Doc. 1 ¶¶ 151, 152, 188). It does not appear that any such claim could be cognizable even if Plaintiffs satisfied the state actor element of section 1983 claim. First, merely threatening legal action—without initiating any proceedings to enforce the demand—does not deprive any interest cognizable under the Due Process Clause. *See Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011). Second, a state actor's deprivation of another's property is not cognizable under the Due Process Clause where "adequate state post-deprivation remedies are available," even where the deprivation was intentional. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Ninth Circuit has held that California law "provides an adequate post-deprivation remedy for any property deprivations" pursuant to the California Government Claims Act. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).

#### 2. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440–441 (1985) (quoting U.S. Const. amend. XIV).

12

"To state a claim, [a] [p]laintiff must show that [d]efendants intentionally discriminated against [them] based on [their] membership in a protected class [] or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose." *Adams v. Davis*, No. 1:20-CV-01198-EPG PC, 2020 WL 6130959, at *3 (E.D. Cal. Oct. 19, 2020) (citing, *inter alia*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), & *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)), *report and recommendation adopted*, 2021 WL 534953 (Feb. 12, 2021). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

Plaintiffs' equal protection claim is based on conclusory allegations that Defendants "target[ed] Plaintiffs based on their disabilities" and engaged in "[d]iscrimination based on disability status and pro se representation." (Doc. 1 ¶¶ 152, 188). The complaint is devoid of facts that would permit the drawing of any inference that Defendants acted with an intent or purpose to discriminate against Plaintiffs because of their alleged disabled status.

### iv. Municipal Liability

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long*, 442

F.3d at 1189 ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]"). Finally, a municipality may be liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802-803 (9th Cir. 2018).

Thus, to establish a § 1983 claim for municipal liability, Plaintiffs must show: (1) that they possessed a constitutional right of which they were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to Plaintiffs' constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

### C. ADA Claims

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*. To state a claim under Title II of the ADA, a plaintiff must assert that (1) they are "an individual with a disability;" (2) they are "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) they were "either excluded from participation in or

1   denied the benefits of the public entity's services, programs, or activities, or [were] otherwise
2   discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or
3   discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259,
4   1265 (9th Cir. 2004).

5         To recover compensatory damages under Title II, a plaintiff must establish intentional
6   discrimination on the part of the defendant. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674
7   (9th Cir. 1998), *as amended* (October 8, 1998). "Intentional discrimination" involves "deliberate
8   indifference" to a disabled person's need for an accommodation. *Duvall v. County of Kitsap*, 260
9   F.3d 1124, 1138-1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). To establish
10  "deliberate indifference," a plaintiff must show that the public entity had notice that an
11  accommodation was required and failed to act as a result of conduct involving an element of
12  deliberateness. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).

13        Here, Plaintiff Martin alleges that she has post-traumatic stress disorder, anxiety disorder,
14  major depressive disorder, attention deficit hyperactivity disorder, autism spectrum disorder,
15  pneumonia, and inflammation. (Doc. 1 ¶ 29). Plaintiff Borges states that he has post-traumatic
16  stress disorder, anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder,
17  and experienced a hemorrhagic stroke in 2016. *Id.* ¶ 31. Thus, for the purposes of screening the
18  complaint, Plaintiffs sufficiently allege that they are individuals with disabilities.

19        However, Plaintiffs fail to cognizably allege exclusion or denial of services, programs, or
20  activities, or other discrimination resulting from their disabilities. Plaintiffs allege that Kern County
21  Superior Court violated Title II of the ADA due to their "implementing a 43-day complete e-filing
22  shutdown" without emergency provisions, from August 25, 2025, to October 6, 2025, unlike other
23  state courts who implemented far shorter maintenance windows. (Doc. 1 ¶¶ 327, 333, 336, 338).
24  But the County of Kern is not a named party in this action. *See Serris v. Chastaine*, No. 2:22-CV-
25  0434-JAM-CKD PS, 2022 WL 2133900, at *3 (E.D. Cal. June 14, 2022) (noting that, for Title II
26  claims against Solano County Superior Court, the proper defendant was the County of Solano).
27  This fact, by itself, results in the failure of Plaintiffs to bring cognizable Title II claims.

28        Further, Plaintiffs do not adequately allege what reasonable accommodations they were

15

1  denied. Plaintiffs merely assert that they could not electronically file documents with the Kern
2  County Superior Court for a 43-day period. Plaintiffs assert, in a conclusory fashion, that this period
3  "exclusively targeted self-represented and disabled litigants while maintaining full attorney
4  access." (Doc. 1 ¶ 121). Plaintiffs do not provide whether they requested any accommodations from
5  Kern County Superior Court for this period, when and how such accommodations were requested,
6  and whether they were denied. Plaintiffs allege only, without specificity, that they "sought
7  accommodations in January 2025 for filing assistance," but this predates the 43-day period by at
8  least six months. *Id.* ¶ 339.

9  Moreover, Plaintiffs allege that the lack of electronic filing during the 43-day period
10 prevented them from filing any complaint for emergency relief, as they could not physically travel
11 to file paper documents, and no "meaningful alternatives were provided for disabled individuals
12 unable to physically appear." *Id.* ¶¶ 328-329. Plaintiffs do not address whether mail filing was
13 available and, if so, why they were unable to use the mails.

14 Thus, Plaintiffs fail to bring any cognizable claims pursuant to the ADA. *See Hiramanek v.*
15 *Clark*, No. 5:13-CV-00228-RMW, 2016 WL 687974, at *11 (N.D. Cal. Feb. 19, 2016) ("plaintiff
16 has presented no admissible evidence to suggest that he was denied access to filing on the basis of
17 his disability or that mailing his court filings would have been unreasonable … while e-filing in a
18 wider variety of cases might make life easier for litigants, the Superior Court's lack of e-filing
19 cannot form the basis for ADA liability in this case"); *Hiramanek v. California Jud. Council*, No.
20 5:15-CV-04377-RMW, 2016 WL 6427870, at *2 (N.D. Cal. Oct. 31, 2016), *aff'd sub nom.*
21 *Hiramanek v. Jud. Council of California*, 754 F. App'x 580 (9th Cir. 2019) ("Nor has plaintiff
22 explained how defendants' existing filing mechanisms are insufficient to accommodate his alleged
23 disabilities."); *see also Serris*, 2022 WL 2133900, at *4 ("Moreover, conclusory allegations that
24 plaintiff has not received adequate accommodations do not suffice to state a claim. This includes
25 the allegations that unspecified and undescribed ADA requests were denied, ignored, or not
26 promptly addressed.").

27 **D. Fair Housing Act Claims**

28 The Fair Housing Act ("FHA") forbids discrimination "against any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of … that person[.]" 42 U.S.C. § 3604(f)(2). A plaintiff may proceed with a discrimination claim pursuant to the FHA under a theory of disparate impact, disparate treatment, or failure to make reasonable accommodations. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).

"To establish a violation of the Fair Housing Act under the disparate impact theory, the initial burden is on the plaintiff to prove a prima facie showing of discrimination." *A.H.D.C. v. City of Fresno, Cal.*, No. CIV-F-97-5498 OWW, 2004 WL 5866233, at *14 (E.D. Cal. Mar. 9, 2004) (emphasis omitted; citing, *inter alia*, *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997)), *aff'd sub nom. Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006).

"To plead a disparate treatment claim, a plaintiff must allege facts showing that: '(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury.'" *Ortiz v. Mull*, No. 2:25-CV-0028-DC-CKD (PS), 2025 WL 2098594, at *4 (E.D. Cal. July 25, 2025) (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999)).

"To plead a failure to accommodate claim, a plaintiff must allege facts demonstrating that (1) he suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) the defendants knew or reasonably should have known of his handicap; (3) accommodation of the handicap 'may be necessary' to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendants refused to make such accommodation." *Id.* (citing *United States v. Cal. Mobile Home Park Mgmt.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

Here, Plaintiffs make only two cursory references to the Fair Housing Act and assert no specific facts to establish a claim thereunder. *See* (Doc. 1 at 1; *id.* ¶ 13). Thus, Plaintiffs fail to plead any cognizable claims under the FHA.

### E. State Law Claims

Plaintiffs include brief and cursory references to various state law causes of action, including California Civil Code § 52.1 (the "Bane Act"), California Civil Code § 51 (the "Unruh

1  Act"), infliction of emotional distress, among others. Additionally, the facts as asserted by Plaintiffs
2  as well as attached exhibits to the complaint appear to assert a possible state law claim pursuant to
3  California Civil Code § 789.3. *See* (Doc. 1 at 123).

4  Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). Though the Court may exercise supplemental jurisdiction over state law claims, Plaintiffs must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

10  "When a district court 'has dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise supplemental jurisdiction' over remaining state law claims." *Pell v. Nuñez*, 99 F.4th 1128, 1135 (9th Cir. 2024) (quoting 28 U.S.C. § 1367(a)). Indeed, the Court generally "should decline the exercise of jurisdiction" if "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)); *see id.* at 350 n.7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

20  Because the undersigned has concluded that either the Court lacks subject matter jurisdiction over Plaintiffs' claims or the complaint does not state any cognizable claims pursuant to 42 U.S.C. § 1983, the Court did not screen Plaintiffs' claims brought pursuant to state law. In any amended complaint, Plaintiffs must allege any accompanying state law claims pursuant to the applicable standard under state law. *See Maez v. Maez*, No. 1:22-CV-00901-BAM, 2022 WL 4110261, at *4 (E.D. Cal. Sept. 8, 2022), *report and recommendation adopted*, 2022 WL 17406536 (Dec. 2, 2022) ("To the extent Plaintiff's amended complaint attempts to assert primarily state law claims, the Court declines to screen those claims in the absence of a cognizable claim for relief under federal law.").

### III.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is HEREBY RECOMMENDED that Plaintiffs' complaint be DISMISSED without prejudice and that Plaintiffs be granted leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **November 17, 2025**

UNITED STATES MAGISTRATE JUDGE